```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WEIDER HEALTH AND FITNESS, et al.,        :
                                          :
                    Plaintiffs,           :
                                          :    17 Civ. 2089 (RMB) (OTW)
          - against -                     :
                                          :    **DECISION & ORDER**
AUSTEX OIL LIMITED, et al.,               :
                                          :
                    Defendants.           :
------------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/25/19

Having reviewed the record herein, including, without limitation: **(1)** Magistrate Judge Ona T. Wang's 31-page Report and Recommendation, dated December 19, 2018, denying Plaintiffs' and Defendants' cross-motions for summary judgment, dated October 6 and October 20, 2017, respectively, and also denying Plaintiffs' motion for attachment of Defendants' assets, dated March 5, 2018, because, with respect to summary judgment, there are "issues that cannot be resolved at this stage and should be left to the factfinder"; **(2)** Defendants' Memorandum of Law, dated January 10, 2019, supporting their Objections to the Report and Recommendation ("Def. Mem."); **(3)** Plaintiffs' Memorandum of Law, dated January 10, 2019, supporting their Objections to the Report and Recommendation ("Pl. Mem."); and **(4)** the transcript of the parties' helpful oral argument held on February 12, 2019 ("Transcript"), **the Court denies Plaintiffs' and Defendants' Objections and accepts the summary judgment recommendations in the Report and Recommendation,** as follows:[1]

---

[1] **Any arguments raised by the parties but not specifically addressed herein have been considered by the Court and rejected.**

1

1 – **Standard of Review**

"A district court reviewing a magistrate judge's report and recommendation on a dispositive motion, such as a motion for summary judgment, 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" Kastle v. Tompkins, 2017 WL 3206341, at *1 (S.D.N.Y. July 27, 2017); Fed. R. Civ. P. 72(b)(3)). "Objections to the recommended ruling are reviewed de novo." Id.; Fed. R. Civ. P. 72(b)(3). "Unobjected to portions of the recommended ruling are reviewed for clear error." Tompkins, 2017 WL 3206341, at *1.

Summary judgment is appropriate (only) where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

2 – **The Report and Recommendation**

Plaintiffs Weider Health and Fitness and Bruce Forman have brought this breach of contract action against Defendant AusTex Oil Limited ("AusTex"). Complaint, dated Mar. 23, 2017; see also Report and Recommendation at 2-10. Plaintiffs are preferred shareholders of AusTex and have sought to redeem their shares pursuant to a subscription agreement, dated October 13, 2013 ("Subscription Agreement"), which has attached to it certain "terms of issue" ("Terms of Issue") (together, the "Transaction Documents"). Complaint ¶¶ 9, 14-15. The Transaction Documents were drafted by AusTex and Ptolemy Energy Holdings LLC ("Ptolemy"). Report and Recommendation at 7. Ptolemy is a major AusTex shareholder who also purchased (and continues to hold) preferred shares of AusTex. Id. at 6-8.

In or around March 2017, Plaintiffs requested AusTex to redeem their shares. Complaint ¶ 21 ("[E]ach of WHF and Forman exercised its personal right as a[] [Preferred] Shareholder . . . to send Shareholder Redemption Notices dated March 10, 2017 to defendant AusTex . . . ."). AusTex demurred. Id. ¶ 24 ("AusTex failed to remit the WHF Termination Amount to WHF and the Forman Termination Amount to Forman on or before March 22, 2017 and continues to refuse to remit the WHF Termination Amount to WHF and the Forman Termination Amount."). Plaintiffs allege that Defendants are liable to Plaintiffs for approximately $4.1 million in damages resulting from AusTex's refusal to redeem their shares. Id. at 22-23. At the core of the parties' dispute is whether a so-called "Shareholder Redemption Event" (as set forth in the Transaction Documents) occurred and, if so, required AusTex to redeem Plaintiffs' shares.

In her thorough Report and Recommendation, Judge Wang made five principal findings.

**First**, Judge Wang found that the Transaction Documents are "ambiguous." Report and Recommendation at 17. She correctly concluded that the documents "cannot logically co-exist." Id. "[T]hey were clearly not intended to be coterminous, and each . . . purports to be more expansive than the other, by wholly including the other." Id. at 17. Judge Wang concluded that the ambiguity of the Transaction Documents "cannot be resolved at this stage and should be left to the factfinder." Id. at 18.

As a rule, "a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008). A contract is ambiguous if "a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." Id. The Court finds that the Transactions Documents – objectively viewed de novo – are susceptible of more than one

3

interpretation. The Subscription Agreement enumerates in Section 5.1 several events that may constitute "Redemption Events," i.e., circumstances under which shares may be redeemed. Pl. Mem., Ex. D at 37-38. Among the events enumerated in Section 5.1 is a subcategory called "Shareholder Redemption Event[s] as defined in and described in the Terms of Issue." Id. at 38. The Terms of Issue state (in Section 5.1) that Shareholder Redemption Events include "the occurrence of . . . a Redemption Event." Pl. Mem., Ex. E at 7-8. In other words, as Judge Wang concluded, the crossreferences in these two provisions are circular and ambiguous. "[E]ach provision purports to be more expansive than the other, by wholly including the other." See Report and Recommendation at 17.

Defendants acknowledge that the Transaction Documents are ambiguous. Oral Argument Tr. at 27 (Defense Counsel: "[Y]our Honor has the report and recommendation, [and] we believe that it goes through quite clearly how the contract is ambiguous."); Pl. Mem. at 2 ("The R&R correctly found that the language in . . . the Terms of Issue is ambiguous . . . ."). Defendants, nevertheless, endeavor to establish that the ambiguity should be resolved in Defendants' favor by embracing the extrinsic evidence offered by Defendants in the form of corporate executive affidavits. Pl. Mem. at 15. The argument fails because, among other things, "[w]hen a contract is ambiguous and there is relevant extrinsic evidence as to the parties' intent, the proper interpretation of the disputed language becomes a question of fact for the jury." Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 391 (S.D.N.Y. 2014).

Moreover, the affidavits that the Defendants rely upon appear only to compound the ambiguity and confusion contained in the Transaction Documents. The evidence appears to include self-serving and conclusory affidavits of officers of Defendant AusTex and of Ptolemy (whose interests, in the case of Ptolemy, directly compete with the interests of Plaintiffs). See,

4

e.g., Declaration of Richard Adrey, the Managing Director of AusTex, dated Oct. 20, 2017 (ECF 59), ¶ 28 (**"If Section 5.1 of the [] Terms of Issue is unclear, that was a mistake."**) emphasis added)); Declaration of Nicholas Stone, Manager of Ptolemy, dated Oct. 19, 2017 (ECF 60), ¶ 34 ("When Ptolemy entered into the Subscription Agreement, it understood that . . . [it] retained the authority to permit or reject [a] request for redemption [from any other Preferred Shareholder]."). The Court cannot resolve what the parties intended or did not intend. See Patrizzi v. Bourne in Time, Inc., 2013 WL 3975948, at *5 (S.D.N.Y. Aug. 5, 2013).

**Second**, Judge Wang correctly found that the Transaction Documents do not clearly create a condition precedent to redemption of shares "whereby Ptolemy controls the occurrence of all redemption events." Report and Recommendation at 18. Defendants seek to rely upon Section 5.1 of the Subscription Agreement which states that "[a] Redemption Event shall occur, at the option of the Required Purchasers [i.e., Ptolemy], if . . . a 'Shareholder Redemption Event' [occurs] as defined in and described in the Terms of Issue." Pl. Mem. at 3 (citing Subscription Agreement at 36-37). The Terms of Issue do not contain "at the option of" language. Indeed, Section 5.1 defines a "Shareholder Redemption Event" to include "the occurrence of . . . a Redemption Event." See Pl. Mem., Ex. E at 7-8. The same kind of ambiguity that is identified by the Court at pp. 3-4 supra surrounds the meaning of "at the option of," i.e., the crossreferences in the Transaction Documents do not provide clarity. Upon summary judgment, neither the Subscription Agreement nor the Terms of Issue give Ptolemy the unambiguous right to "greenlight" another Preferred Shareholders' redemption rights.

Moreover, such "conditions" are disfavored under New York law, "and in the absence of unambiguous language, a condition will not be read into the agreement." Powlus, 2011 WL 135822, at *4 (S.D.N.Y. Jan. 10, 2011). Unambiguous language indicating that a (pre)condition

5

may exist commonly include such terms as "on condition that," "provided that," "if," "unless and until," or "null and void." Powlus v. Chelsey Direct, LLC, 2011 WL 135822, at *4 (S.D.N.Y. Jan. 10, 2011). The Transaction Documents do not use such phrases. See Oral Argument at 19 (Plaintiffs' Counsel: "We don't think 'at the option' is unmistakable language. . . . [I]t's not even remotely a condition precedent."). The Defendants, as Judge Wang concluded, have failed to persuade the Court that there is no genuine issue of fact with respect to the existence and meaning of any condition precedent. See Ginett v. Computer Task Grp., Inc., 962 F.2d 1085, 1099–1100 (2d Cir. 1992).

**Third**, Judge Wang correctly found that Defendants' "mutual mistake" defense is also not resolvable on summary judgment. Report and Recommendation at 24. That is, in light of the ambiguities contained in the Transaction Documents (referenced above), any determination whether there was a mutual mistake in the drafting of the agreements should be made by the trier of fact. Report and Recommendation at 24-25 (citation omitted). "Under New York law, the equitable remedy of reformation of a contract should be allowed only where mutual mistake . . . is clearly established, particularly when the negotiations were conducted by sophisticated, counseled business people." Vemics, Inc. v. Meade, 2011 WL 2693275, at *3 (S.D.N.Y. June 30, 2011) (internal quotations omitted). Stated in other terms, in order to overcome the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties, "evidence of a very high order is required." Id. Such evidence is not presented here. As the Court concluded at p. 3 supra, Defendants' reliance on self-serving and conclusory affidavits is insufficient at the summary judgment stage to establish how the parties intended the Transaction Documents to be applied. See Patrizzi, 2013 WL 3975948, at *5; see also Report and Recommendation at 25 n.13.

**Fourth**, Judge Wang correctly found that the Plaintiffs are not entitled to summary judgment on their (derivative) indemnification and breach of subsidiary guarantee claims "for the same reasons that they have failed to demonstrate that they are entitled to summary judgment on the breach of contract claims." Report and Recommendation at 26. To succeed on their indemnification and breach of the subsidiary guarantee claims, Plaintiffs must first prove that Defendants breached the terms of the Transaction Documents. This has not occurred. See Complaint ¶ 31 ("AusTex agreed to indemnify [preferred] shareholders from all Damages . . . incurred as a result of any breach of any agreements made by defendant AusTex in the Transaction Documents . . . ."); id. ¶ 35 ("Pursuant to the [Subsidiary] Guarantee, defendants . . . jointly and severally unconditionally guaranteed the payment of all amounts required to be paid by defendant AusTex to any [preferred] shareholder pursuant to the Transaction Documents, including, but not limited to, any amount due [] in connection with the redemption of [] preferred shares . . . ."). The Court has found that Plaintiffs are not entitled to summary judgment on their breach of contract claims, see pp. 2-5 supra, and, a fortiori, they are not entitled to summary judgment on their indemnification and breach of the subsidiary guarantee claims either. See Report and Recommendation at 26.

**Fifth**, Judge Wang found that Plaintiffs' motion for attachment of Defendants' assets should be denied because "Plaintiffs have failed to show that all of the factors necessary to obtain attachment are met." Report and Recommendation at 31. Judge Wang's ruling appears to conflict with an earlier ruling of Magistrate Judge Andrew W. Peck, dated September 29, 2017. See Transcript, dated Sept. 29, 2017, at 3 (Judge Peck: "[I am] inclined to grant an attachment on a TRO basis, but . . . you all need to sit down and work out the language of the attachment . . . ."). Judge Peck's order was entered **"on consent"** of the parties and required the following: (1)

Defendants shall give notice to Plaintiffs' counsel within 24 hours of any notice by a preferred shareholder to redeem shares; (2) Defendants shall not transfer any money or assets outside of the United States; and (3) Defendants shall abide by these terms until further agreement of the parties or order of this Court. Id. at 20-21. Judge Peck's order appears to be "law of the case." See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise.") (internal quotations omitted).

The Court need not definitively resolve the difference between Judge Peck's and Judge Wang's rulings because the attachment motion, dated March 5, 2018, is being denied (without prejudice) as moot. See Tide Nat'l Gas Storage I, L.P. v. Falcon Gas Storage Co., 2011 WL 4526517, at *15 (S.D.N.Y. Sept. 29, 2011). The Court has entered its own order, dated February 19, 2019, which codifies Judge Peck's prior rulings. See Order, dated Feb. 19, 2019. In addition to requirements (1) - (3) described at pp. 7-8 supra – and upon learning from Defendants that they were evaluating all their options to resolve competing preferred shareholder claims against them and contemplating the filing of an interpleader action in federal court in Oklahoma – the Court also required that Defendants "escrow Plaintiffs' alleged damages, i.e., $4.1 million plus interest, and, reasonable attorneys' fees, into an independent third-party account which may not be drawn down without prior approval of the Court." See Order, dated Feb. 19, 2019, at 2; see also Defendants' Letter, dated Feb. 19, 2019. at 1. The February 19, 2019 Order is specifically "without prejudice to the merits of either party's case." See Order, dated Feb. 19, 2019, at 2.

On March 13, 2019, Defendants filed a motion to vacate part of the Court's February 19, 2019 Order. That motion is still being briefed by the parties. See Transcript of Oral Argument,

8

dated Mar. 6, 2019, at 10-12. Defendants have also filed an interlocutory appeal of the Court's Order which has been stayed by the Second Circuit Court of Appeals pending resolution of Defendants' motion to vacate. Initial Notice of Stay of Appeal at 1, Weider Health & Fitness v. AusTex Oil Ltd., (2d Cir. Mar. 19, 2019) (No. 19-653) ("[T]his appeal is stayed pending resolution of the motion(s) [i.e., Defendants' motion to vacate]."). The Court anticipates filing a (further) written decision with respect to its February 19, 2019 Order and the motion to vacate following the completion of briefing.

**Conclusion & Order**

For the reasons stated above, Plaintiffs' and Defendants' Objections to Judge Wang's December 19, 2018 Report and Recommendation [#116, #117] are denied.


Dated: New York, New York
       March 25, 2019

*RMB*

**RICHARD M. BERMAN**
**U.S.D.J.**

9