```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/9/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WEIDER HEALTH AND FITNESS, et al.,

      Plaintiffs,

  - against -

AUSTEX OIL LIMITED, et al.,

      Defendants.
------------------------------------------------------------x

17 Civ. 2089 (RMB) (OTW)

**DECISION & ORDER**

Having reviewed the record herein, including, without limitation: **(1)** the transcript of the parties' conference with Magistrate Judge Andrew W. Peck, dated September 29, 2017; **(2)** the transcript of this Court's hearing on February 12, 2019; **(3)** Plaintiffs' letter to the Court, dated February 19, 2019, stating that "the parties cannot agree to mediate the dispute"; **(4)** Defendants' letter to the Court, dated February 19, 2019, advising the Court that they are "evaluating all their options to resolve the competing claims against them [i.e., not only the Plaintiffs' claims], including the filing of [an] interpleader action in federal court in Oklahoma"[1]; **(5)** the Court's Order, dated February 19, 2019 (the "February 19 Order"), memorializing Judge Peck's injunction, dated September 29, 2017; **(6)** Defendants' memorandum in support of their Motion for Relief, dated March 13, 2019; **(7)** Plaintiffs' Opposition, dated March 27, 2019; and **(8)** the transcripts of the March 5 and March 6, 2019 hearings, **the Court denies Defendants' Motion for Relief, as follows**:

---

[1] Oklahoma is the principal place of business of two of the corporate Defendants in this case, International Energy Corporation and International Energy Corporation of Oklahoma. Ptolemy Energy Holdings, LLC ("Ptolemy"), a Texas corporation, is AusTex's majority preferred shareholder and holds a seat on AusTex's board of directors.

1

**Injunction Agreed to By the Parties**

1 – At a conference with the parties on September 29, 2017, Magistrate Judge Andrew W. Peck, to whom the matter had been referred, stated that he was "inclined . . . to give the Plaintiff[s] protection of some sort," against the danger that Defendants might irreparably dissipate their assets and not be able to "satisfy a 4 or $5 million judgment if [Plaintiffs] prevail[]." Transcript, dated Sept. 27, 2017 at 16-17. At a follow up conference two days later, on September 29, 2017, Judge Peck stated that he was "inclined to grant an attachment on a TRO basis." Transcript, dated Sept. 29, 2017 at 3, 20. Judge Peck entered an order reflecting such a financial restraint upon Defendants and with the consent and agreement of **both Plaintiffs and Defendants**. Id. at 21 ("Judge Peck's Order").

Judge Peck's Order required the following: (i) Defendants shall "give notice to [Plaintiffs' counsel] within 24 hours of any notice [by another shareholder] to redeem shares, put shares, [or] call shares . . . so that [Plaintiffs] may take [] appropriate remedies in this court to seek relief"; (ii) Defendants shall "not transfer any money or assets outside of the United States except in connection with repayment of the 'Macquarie Loan' [i.e., an outstanding term loan from an Australian bank to Defendants] and up to $45,000 per month to be transferred to its Australian parent company for use by that company in its [on-going] operations"; and (iii) Defendants shall abide by these terms "until further agreement of the parties or order of the Court." Id. at 20-21; see also id. at 5 (Defense Counsel: "We are guaranteeing that the assets of the company that are in the United States will be here. Therefore, [if] plaintiff obtains a judgment, plaintiff can go get – try to get whatever assets plaintiff would like to get, but we're far from that.").

3 – Defendants reserved the right to request a modification of Judge Peck's Order if AusTex's operating circumstances were to change. Id. at 28 (Defense Counsel: "[T]o the extent that there is any need to alter the agreed-upon order, for example, should there be an extraordinary cost, unanticipated cost [] or another business issue that comes up, defendants, of course, preserve the right to come in and ask your Honor to adjust [the Order]."). Defendants did not make any such request of the Court. Indeed, Defendants represented to the Court in a letter, dated November 20, 2018, that they "have honored, and will honor" Judge Peck's Order. Letter, dated Nov. 20, 2018, at 2.

4 – At a hearing held on February 12, 2019, Defendants confirmed to the Court that they were continuing to abide by Judge Peck's Order. Id. at 5-6 (Court: **"[I]t appeared to me that an order had been agreed to with [Judge Peck] as to a type of escrow or a freeze of assets. . . . and I think both sides agreed to it. Is that the protection that plaintiffs have here?"** Defense Counsel: "The current order that the defendants are still complying with is that they will not transfer any money outside of the United States, with the exception of approximately $45,000 a month in operating expenses.") (emphasis added). Plaintiffs raised "concern[s] about the parameters of [Judge Peck's] Order" which, they contended, does not require "Defendants to keep all the money in escrow" and Plaintiffs "are not comfortable [with that] because they could potentially distribute the funds inside the United States to . . . other preferred shareholders." See Transcript, dated Feb. 12, 2019, at 5-6. Defense Counsel responded that "that is not the intent of the company. And certainly, as evidenced by the time that's gone by, from the time that the redemption request was made and the assets sold, they haven't done that." Id. at 6. The Court

3

notified both parties that **"there needs to be some further formalization of the [Judge] Peck Order."** Id. at 9 (emphasis added).[2]

## Adverse Change of Circumstances

5 – On February 19, 2019, Defendants filed a letter with the Court which presented facts which posed a threat of irreparable harm to Plaintiffs' interests and to the viability of this litigation. First, Defendants stated that they "cannot agree to Plaintiffs' terms for mediation because Defendants' position remains that each Preferred Shareholder is *pari passu* to the rights of [Plaintiffs and] the other Preferred Shareholders." This suggests that preferred shareholder(s) other than Plaintiffs, including Ptolemy, are interested in redeeming their shares and that Defendants may not have sufficient assets to accommodate all of the claims in full. See Transcript, dated Feb. 12, 2019, at 5, 34. Second, Defendants advised the Court that they were contemplating "filing [an] interpleader action in federal court in Oklahoma." Defendants' Letter, dated Feb. 19, 2019, at 1. This suggests that Plaintiffs may be forced to litigate their claims in a forum not of their choosing. According to Defendants, "[t]he filing of such an interpleader action would allow the parties with competing claims to resolve or settle their disputes and allow for an equitable distribution of certain funds resulting from the arms' length sales of corporate assets." Id. Such a litigation "would not only determine Plaintiffs' claims vis-a-vis Defendants but also vis-a-vis competing claimants who are not parties to this action." Id. This also confirms that Defendants may not have sufficient assets to satisfy the preferred shareholders' claims.

## The Bases for an Injunction

6 – The purpose of Judge Peck's Order was "[to] freez[e] the status of the [Defendant's] company's resources, as it were, to cover the plaintiffs' case, [i.e., Plaintiffs' alleged damages]."

---

[2] The Court also encouraged the parties to pursue mediation of their claims. Id. at 2.

Transcript, dated Feb. 12, 2019, at 13. As the parties were advised on February 12, 2019, this Court believed it was important to memorialize Judge Peck's Order. Id. at 9. Defendants' February 19, 2019 letter, as noted above, presented adverse circumstances and a sense of urgency, particularly because of Defendants' proposed filing of an interpleader action in Oklahoma involving parties not before this Court. Such an action, the Court reasoned, could undermine Plaintiffs' rights and circumvent this Court's jurisdiction to adjudicate this dispute. See Plaintiffs' Letter, dated Feb. 22, 2019, at 2.[3]

7 – The Court's February 19 Order codified Judge Peck's Order and includes (i)-(iii) set forth at p. 2 supra. It also provides, based principally upon Defendants' February 19, 2019 letter, that (iv) "Defendants are prohibited from taking any actions that would circumvent or violate the terms of Judge Peck's September 29, 2017 Order or this [February 19] Order." Order, dated Feb. 19, 2019, at 1; and, (v) "Without prejudice to the merits of either party's case and in view of the apparent likelihood of a trial of this action, Defendants shall forthwith escrow Plaintiffs' alleged damages, i.e., $4.1 million plus interest, and, reasonable attorneys' fees, into an independent third-party account which may not be drawn down without prior approval of the Court."[4] Id. at 2.

---

[3] This case is proceeding toward a trial on the merits following the recent determinations of Magistrate Judge Ona T. Wang and of this Court to deny the parties' cross-motions for summary judgment because there are disputed issues best left for the jury. Decision & Order, dated Mar. 25, 2019.

[4] At the hearing on February 12, 2019, Plaintiffs argued that based upon the clear language of their contract with AusTex they are entitled to legal fees in the case of a breach. Transcript, dated Feb 12, 2019, at 13-14, 17 (Plaintiffs' Counsel: The Plaintiffs are preferred shareholders of the Defendant AusTex, and they seek $4.1 million plus attorneys' fees and interest." Court: "Where do the attorneys' fees come from?" . . . Plaintiffs' Counsel: "The subscription agreement provides for legal fees. . . . There's a provision that says if any of the transaction documents are breached . . . then the party is entitled to attorneys' fees relating to the breach of contract.). Defendants did not refute Plaintiffs' assertion.

5

The Court in this Decision & Order is also setting a significant bond to be imposed upon Plaintiffs. See ¶ 11 infra.

8 – The Court believes that the Feb. 19 Order is necessary and that it satisfies the Federal Rules of Civil Procedure's requirements for the issuance of an injunction. See Fed. R. Civ. P. 65 ("Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.")); see also In re Feit & Drexler, Inc., 760 F.2d 406, 416 (2d Cir. 1985).

### Additional Findings

9 – There are (at least) seven principal reasons why the Court has issued the Feb. 19 Order, as modified herein. **First**, an "attachment" injunction was first ordered in this case by Judge Peck on September 29, 2017. Transcript, dated Sept. 29, 2017 at 3, 20 (Judge Peck: "[I am] inclined to grant an attachment on a TRO basis."); see also Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise.") **Second**, the Feb 19 Order maintains the status quo by codifying Judge Peck's September 29, 2017 Order. See BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 2013 WL 2322678, at *11 (S.D.N.Y. May 21, 2013) ("Where a court possesses authority in the first instance to issue an order, it necessarily retains the inherent authority to effectuate that order."). **Third**, both parties to this case consented to Judge Peck's Order, as noted at p. 3 supra. See Drywall Tapers & Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO v. Nastasi & Assocs. Inc., 488 F.3d 88, 92 (2d Cir. 2007) ("An appeal from a consent injunction is 'generally unavailable' since the parties are held

6

to have waived any objection to issues included in the injunction."). **Fourth**, Defendants never objected to Judge Peck's Order between the time it was issued and February 21, 2019. See Chevron Corp. v. Donziger, 2011 WL 1560926, at *2 (S.D.N.Y. Apr. 18, 2011) ("by failing to raise this objection while the preliminary injunction motion was being litigated, [Defendants] effectively waived any quarrel with the form of the proposed order"); Barrientos v. 1801 1825 Morton LLC, 583 F.3d 1197, 1215 (9th Cir. 2009) ("[Defendant] did not object to the scope of the injunction before the district court and, therefore, has waived the objection."). **Fifth**, the adverse changed circumstances which were presented by Defendants to the Court in their February 19, 2019 letter necessitated the Court's modification of Judge Peck's Order to prevent any (further) irreparable harm to Plaintiffs. See Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F. Supp. 153, 161 (S.D.N.Y. 1995) (a district court's "power to modify an injunction, like the power over all its orders, is inherent. . . . Thus, a district court may modify [] a preliminary injunction when, based on principles of equity, the modification is necessary to preserve the status quo."). **Sixth**, the modifications to Judge Peck's Order are necessary because Defendant AusTex may not have enough assets to redeem in full Plaintiffs' shares and Defense Counsel maintains that Plaintiffs' redemption rights are pari passu with AusTex's other preferred shareholders, including Ptolemy, who are not parties in this case. See Transcript, dated Feb. 12, 2019, at 5, 34 (Court: "How much money is there [in the] kitty, as it were?" Defense Counsel: "[I]t would be somewhere in the neighborhood of $14.5 million. That is an estimate." . . . Court: "So you're $4.1 million?" Plaintiffs' Counsel: [Yes, and] Ptolemy is $21 million. [But] [t]here's 14 million in the pot."). **Seventh**, Plaintiffs have provided to the Court, including in their motion for summary judgment, enough evidence to conclude that there are serious questions about whether AusTex breached the terms of the parties' contract when it refused to redeem Plaintiffs'

7

shares. See Citigroup Glob. Markets Inc. v. VCG Special Opportunities Master Fund Ltd., 2008 WL 4891229, at *1, 5 (S.D.N.Y. Nov. 12, 2008), aff'd, 598 F.3d 30 (2d Cir. 2010), and aff'd, 598 F.3d 30 (2d Cir. 2010) ("To obtain a preliminary injunction in this District, the moving party must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor") (internal quotations omitted); see also Decision & Order, dated Mar. 25, 2019, at 3-7.

10 – Defendants appear substantially to have complied with the Court's February 19 Order. At a hearing held on March 5, 2019, the Court urged the parties to immediately "meet and confer" in an effort to resolve any remaining issues with respect to the escrow arrangement. Transcript, dated Mar. 5, 2019, at 2-3. One day later, the parties presented to the Court a mutually agreed-upon draft escrow agreement that appears to comport with the requirements of the February 19 Order. Transcript, dated Mar. 6, 2019, at 2 (Defense Counsel: "I have a copy of the escrow agreement for the Court if it would like one. I have provided one to Plaintiffs' counsel." . . . Plaintiffs' Counsel: "For the most part, your Honor, I think it's in substantial compliance."); see also Letter Motion, dated Mar. 12, 2019, Ex. 1 (Amended Escrow Agreement). With respect to what appear to be relatively minor escrow agreement issues remaining, as described in letters to the Court, dated March 12 and 13, 2019, these will be addressed at a hearing with the Court on Thursday, April 11, 2019, at 12:00 p.m., if the parties are unable to resolve them beforehand.

11 – The Court believes that the following modification to its Feb. 19 Order is appropriate and is forthwith to be implemented by Plaintiffs. See Fed. R. Civ. P. 65(c); Def. Motion to Vacate at 14-15 ("[T]he Court should require security in an amount sufficient to

8

indemnify Defendants for any damages."); see also Corning Inc. v. PicVue Electronics, Ltd., 365 F.3d 156 (2d Cir. 2004). The Court directs the Plaintiffs forthwith to post a $90,000 bond with the Clerk of Court as security. See Interlink Int'l Fin. Servs., Inc. v. Block, 145 F. Supp. 2d 312, 321 (S.D.N.Y. 2001).

**Conclusion & Order**

For the reasons stated above, Defendants' Motion for Relief [#132] from the Court's February 19 Order is denied in part and granted in part.

There will be a further hearing consistent with this Decision & Order on Thursday, April 11, 2019, at 12:00 p.m.


Dated: New York, New York
April 9, 2019

*RMB*
**RICHARD M. BERMAN**
**U.S.D.J.**